IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EXTRUSION DIES INDUSTRIES, LLC and
GARY OLIVER,

                        Plaintiffs,

  v.

CLOEREN INCORPORATED,

                        Defendant.

OPINION and ORDER

08-cv-323-slc

---

Plaintiff Gary Oliver, an expert in polymer processing technologies, used to work for defendant Cloeren in Texas and now works for co-plaintiff Extrusion Dies Industries, LLC (EDI) in Wisconsin. Cloeren has cried foul and has invoked the covenant not to compete and the confidential information clause in Oliver's "Secrecy Agreements" with Cloeren. A preliminary injunction hearing is imminent. Before the court is the parties' dispute over which state's law controls the covenant not to compete during proceedings on the preliminary injunction.[1] As explained below, I conclude that Texas law controls because that state's contacts clearly are of greater significance. The imposition of Wisconsin law to the disputed employment contract would constitute officious intermeddling.

The parties have submitted a great deal of evidence to the court; for purposes of this order, I will recite only those facts necessary to a decision on the pending motion and are either undisputed or favor plaintiffs. In August of 1990, Oliver began working for Cloeren in Orange, Texas as its Senior Corporate Scientist. Oliver signed a "Secrecy Agreement" that contained a covenant not to compete and which stated that the agreement would be governed by Texas law. Thereafter, Oliver lived in either Texas or Colorado while working for Cloeren. The relationship

---

[1] The parties agree that Texas law governs everything else.

began to sour in late 2007; in early April 2008 Oliver orally announced his intent to leave Cloeren. His resignation letter (actually an e-mail) is dated April 29, 2008 and provides two weeks notice, which would have made May 13, 2008 his last day of work.

According to Oliver, on April 28, 2008, EDI offered him a job as its Vice President of Technology. It is not clear yet on what date Oliver accepted this offer, on what date he physically moved to Wisconsin or on what date he first reported to work at EDI's Wisconsin facility. On May 27, 2008, Oliver and EDI filed the instant lawsuit against Cloeren in the Circuit Court for Chippewa County, Wisconsin.

Oliver and EDI claim that, notwithstanding the 1990 Secrecy Agreement's choice-of-law clause, Wisconsin law governs the covenant not to compete. This could make a difference because if this court were to find the covenant unreasonable (an issue on the agenda at the PI hearing), then under Wisconsin law the clause would be completely void, *see* Wis. Stat. § 103.465; *General Medical Corp. v. Kobs*, 179 Wis.2d 422 (Wis. App. 1993), while under Texas law, this court would be required to amend the clause to make it reasonable and then enforce it, *see* Tex. Bus. & Comm. Code Ann. § 15.51(c) and *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 238-40 (Tex. App. 2003).

A federal court sitting in diversity makes choices of law using the rules and principles of the forum state. *United Vaccines, Inc. v. Diamond Animal Health, Inc.*, 409 F. Supp.2nd 1083, 1090 (W.D. Wis. 2006). In *United Vaccines*, the court stated that Wisconsin law generally recognizes validly executed choice of law provisions "provided there are no public policy reasons to disregard them." *Id.* This statement is generally correct but not sufficiently nuanced. Wisconsin's choice of law jurisprudence has "something of a checkered past," *Drinkwater v.*

2

*American Family Mutual Ins. Co.*, 290 Wis.2d 642, 654, 2006 WI 56 at ¶ 32, and it is not entirely clear which tests apply to which types of claims. Indeed, as the court acknowledged in *Drinkwater,* different issues in the same lawsuit could be tried under different state laws, depending on the facts and equities presented. *Id.* at 657, n. 3.

Wisconsin's "first rule" for choice of law is that the law of the forum presumptively applies "unless it becomes clear that nonforum contacts are of the greater significance." *Cowley v. Abbott Laboratories, Inc.*, 476 F. Supp.2d 1053, 1057 (W.D. Wis. 2007), quoting *State Farm Mutual Automobile Ins. Co. v. Gillette*, 251Wis.2nd 561, 588, 2002 WI 31at ¶ 51. In *Gillette*, a contract case, the court held that "contract rights must be determined by the law of the jurisdiction with which the contract has its most significant relationship." *Gillette,* 251 Wis.2d at 577, 2002 WI 31 at ¶ 26, cited in *McCraw v. Mensch*, 461 F. Supp.2d 872, 877 (W.D. Wis. 2006). Factors to consider include: (1) place of contracting; (2) place of performance; (3) place of negotiation; (4) location of the subject matter of the contract; and (5) residences or places of business of the parties. *McCraw,* 561 F. Supp.2d at 877.

In *McCraw*, the court declined to consider the Wisconsin Supreme Court's choice of law test stated in *Drinkwater*, finding that it applied only to tort cases. *McCraw*, 461 F. Supp.2d at 877-78. I am not sure the court in *Drinkwater* meant to create this dichotomy, but no matter which test I employ, the result is the same.

The *Drinkwater* court adopted the *Gillette* test as its starting point, melding it with the similar first test stated in *Beloit Liquidating Trust v. Grade*, 270 Wis.2d 356, 374, 2004 WI 39 at ¶24: "The first test is whether the contacts of one state to the facts are so obviously limited and

minimal that the application of that state's law constitutes officious intermeddling." *Drinkwater*, 290 Wis.2d at 658, 2006 WI 56 at ¶ 41.

If–and presumably only if–it is not clear that the nonforum contacts are of greater significance, then at least in tort cases, maybe in others, the court must apply the second test, which involves five "choice-influencing factors" set forth in *Beloit Liquidating Trust* and earlier cases: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Drinkwater*, 290 Wis.2d at 658-59, 2006 WI 56 at ¶¶ 40-42].[2] "The importance of each factor will vary depending upon the specific facts presented in each case." *Beloit Liquidating Trust*, 270 Wis.2d at 375, 2004 WI at ¶ 25.  (Although arising out of a bankruptcy proceeding, the lawsuit in *Beloit Liquidating Trust* involved a claim of breach of fiduciary duty against the officers and directors of the insolvent companies. *Id.* at 360 [¶ 1]).

The court's approach in *Drinkwater, Gillette* and *Beloit Liquidating Trust* appears to have abated the all-or-nothing public policy approach illustrated by cases such as *Beilfuss v. Huffy Corp.*, 274 Wis.2d 500, 2004 WI App 118, and *Bush v. National Studio School Studios, Inc.*, 139 Wis.2d 635 (1987). The first sentence of the court's opinion in *Beilfuss* suggested that Wisconsin public policy was the end-all and be-all when interpreting an employment contract.[3] The court found that Wisconsin policy trumped the employment contract's choice of Ohio law,

---

[2] A judge in the adjoining federal district interprets the sequencing as I do: the court reaches the second test only if the movant passes the "officious intermeddling" test. *See Brooks v. General Casualty Company of Wisconsin*, 2007 WL 4305577 (E.D. Wis. 2007). Judge Griesbach did not publish his opinion and even if he had it would not be precedential; *Brooks* nonetheless serves as a cairn on the analytical trail.

[3] "Strong public policy considerations underpin Wisconsin's law controlling covenants not to compete and lead to the conclusion that the choice of law clause in an employment contract between David Beilfuss and Huffy Corporation is invalid." *Id.* at 502 [¶ 1].

4

which, like Texas law, allows blue-penciling of covenants not to compete. *Id.* at 508-09 2004 WI App 118 at ¶ 15-16. Worth noting post-*Drinkwater* is that Beilfuss was a Wisconsin resident at the time he contracted with Huffy and that he apparently lived in Waukesha County during his 28-month tenure with Huffy. *Id.* at 502-3, 2004 WI App 118 at ¶¶ 2-3. Therefore, to the extent the court in *Beilfuss* skipped the first step of the analysis, this didn't change the outcome because both parties' contacts with Wisconsin were at least as significant as their contacts with Ohio.

In *Bush*, plaintiff was a school portrait photographer who worked for 21 years in Northern Wisconsin for a Minnesota company before being let go. Plaintiff sought to apply Wisconsin's fair dealership law (WFDL) to his employment contract despite the contract's choice of Minnesota law. The court of appeals held that choice of law provisions "must yield to the legislature's specific policy statements," and that the WFDL, by its terms, could not be varied by contract. 131 Wis.2d 435, 443 (Wis. App. 1986). The Wisconsin Supreme Court affirmed this decision, stating that it could not honor the "party autonomy principle . . . at the expense of important public policies of a state whose law would be applicable if the parties' choice of law provision were disregarded." 139 Wis.2d at 642. In dicta, the court cited covenants not to compete as the sort of contract that could be trumped by statute or common law. *Id.* at 643. The court further noted the parties did not dispute that in the absence of the contract's choice of law clause, Wisconsin law would control. *Id.* at 646.

Given Wisconsin's antipathy toward covenants not to compete in employment contracts, it is not surprising that Oliver would proclaim to this court that he is a Wisconsin resident entitled to the protection of Wisconsin law against his allegedly overreaching former employer

5

down in Texas. But two to four weeks in Wisconsin as EDI's newest VP cannot overcome almost eighteen years in Texas with Cloeren. At the time Oliver and Cloeren executed their first Secrecy Agreement, neither party possibly could have conceived that this agreement would be governed by the law of any other state. To have asserted at the time of its signing that the Secrecy Agreement eventually would be enforced under the laws of Wisconsin–or Alabama, Alaska, Arkansas, *et al.*–would have evoked blank stares from all present. Texas was the place of contracting, the place of performance, the place of negotiation, the location of the subject matter of the contract and the residences and places of business of the parties. *See McCraw,* 461 F. Supp.2d at 877. The parties' natural assumption that Texas law controlled would have stood the test of time: between then and now we have had three presidents, three recessions and two wars with Iraq. A child born in Texas on the day that Oliver signed his first Secrecy Agreement with Cloeren would have been a junior or senior at West Orange-Cove High School last May. Throughout this entire period, Wisconsin, its laws and its policies were complete strangers to Oliver's employment relationship with Cloeren.

      Given my interpretation of Wisconsin's choice of law jurisprudence, this ends the analysis. For completeness's sake, I note that even if this court were to apply the fall-back test of *Drinkwater* (which may be inapplicable to a contract dispute) Texas law still controls:

      (1) Predictability of results: as just noted, only Texas law was predictable to the parties. There was no reason to predict that Wisconsin ever would have any interest in Oliver's employment relationship with Cloeren.

      (2) Maintenance of interstate order: on the facts presented here, this is a variation of the "officious intermeddling" test: it would disrupt interstate order for a state that is a virtual

6

stranger to a contract to impose its diametrically opposed policies in place of the only state having long-term and significant connections to the parties and their contract.

(3) Simplification of the judicial task: this is a wash. A federal court sitting in diversity can apply one state's law as easily as another's, especially in the Westlaw era.

(4) Advancement of the forum's governmental interests: this probably favors application of Wisconsin law, but only slightly. Wisconsin and Texas both will enforce reasonable covenants not to compete. I do not yet know whether they have different thresholds for reasonableness. Wisconsin will quash an unreasonable covenant while Texas will reform it. In a broad policy sense, this difference likely accomplishes each state's goal: employers subject to Wisconsin law will draft narrower restrictions to avoid losing all protection if the covenant is challenged in court. Employers subject to Texas law can afford to draft broader restrictions because it is no-risk and low-cost: if taken to court, the worst possible outcome is judicially-crafted narrower restrictions. But in a specific case, once the lawsuit is filed, the worker is no worse off if Texas law is used because his covenant will be blue-penciled until it is reasonable, the result that is the underlying goal of Wisconsin's policy. On the other hand, the worker could be better off if Wisconsin law is used because if the covenant is unreasonable, it disappears completely. This is contract law's equivalent of criminal law's exclusionary rule: Wisconsin is willing to provide a potential windfall to workers who prevail in a lawsuit in order to put some teeth into the state's goal of deterring overreaching employers. As a practical matter, Cloeren could not have been deterred here because it had no inkling 18 years ago that its employment agreements would be scrutinized in a foreign forum with policies contrary to those embraced by Texas. But here

we are in Madison, Wisconsin, so the forum state's interests cannot be ignored. On these facts, however, they are not entitled to controlling weight.

(5) Application of the better rule of law: Better for whom? Better in what way? In *Drinkwater*, the court noted that factor (5) was a variation of factor (4), except that a court appears to be able to draw its own conclusions about where the equities lie. *See* 290 Wis.2d at 665-66, 2006 WI 56 at ¶¶ 62-63. This court is all in favor of any law or policy that levels the playing field between employees and employers. Disparate bargaining power between workers and owners is unfair and should be discouraged. On the other hand, because Texas law does not prevent the court from ensuring that Oliver, an executive level corporate scientist, is not subjected to unreasonable restrictions, while Wisconsin law has the potential to deprive Cloeren of any protection whatsoever based on events unforeseeable to Cloeren at the time it entered into its agreements with Oliver, it would seem that in this case on these facts, it is more equitable to apply Texas law.

Therefore, it is ORDERED that Texas law shall govern the covenant not to compete in the Secrecy Agreement between Oliver and Cloeren.

Entered this 24th day of September, 2008.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge